282 So.2d 387

**Deborah Renee KENNY, alias**

v.

**STATE.**

1 Div. 316.

Court of Criminal Appeals of Alabama.

May 15, 1973.

Rehearing Denied July 12, 1973.

Thomas M. Haas, Mobile, for appellant.

William J. Baxley, Atty. Gen. and David W. Clark, Asst. Atty. Gen., for the State.

CATES, Presiding Judge.

Selling marijuana: sentence, nine years imprisonment.

I

A State undercover agent got in touch with an informant as to buying marijuana. Later the agent picked up the informant. The two drove in the agent's car to a rendezvous where a man in a Volkswagen told the agent to follow him to a darker place. There with the informant in his car the agent bought $150 worth of marijuana (fifteen "lids") from the appellant who had come from the Volkswagen into the agent's car. Thus, from the State's case the informant was present throughout the entire transaction.

The trial judge refused to order the agent to reveal the name of the informant so that the defense could have him or her served with an instanter subpoena. This ruling was error. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed. 2d 639.

Alabama recognizes the testimonial privilege of the government (in this case the State) to cloak the identity of those who supply information as to wrong-doers with a protective mantle of secrecy. Davis v. State, 46 Ala.App. 45, 237 So.2d 635, was such a case involving a search warrant. See also McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62.

Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, expresses an exception to this testimonial privilege where, as Stewart, J., pointed out in McCray v. Illinois, supra, the issue is guilt or innocence (i. e., conviction beyond a reasonable doubt) as distinguished from that of reasonable probable cause as in the issuance of a search warrant. In the instant case the *Rovario* exception was before the trial court. The defendant, under both State and Federal constitutions, is entitled to compulsory process for witnesses.

However, after the State rested, defense counsel, apparently on a hunch, called as a witness the person who was the wanted informer. Thus, the earlier erroneous ruling became moot.

II

Appellant in her first proposition of law argues that the Alabama Uniform Controlled Substance Act is "absurd and arbitrary to the point of violating the Equal Protection Clauses * * *" State

and Federal because it includes marijuana (marihuana) with heroin, morphine, etc.

The persuasiveness is eloquence wasted because our Supreme Court and this Court have both, since the filing of appellant's brief, ruled that such a classification was reasonable. Boswell v. State, 290 Ala. 349; 276 So.2d 592; Warren v. State, 52 Ala. App. ——, 288 So.2d 817 (1973).

■ The same reasoning covers the further claim of the Act's breaching § 45, Const.1901, which requires that an act relate but to a single subject. Whether the cannabis chemistry is psychogenetic or physical in its effects, we think that the legislative determination and grouping of marijuana with the so called hard drugs is reasonable within decided principles of constitutional law.

### III

Before evidence was adduced the record shows the following:

"(whereupon, said jurors were identified, a jury was struck and sworn to try the issues, and the following proceedings were had:)

"THE COURT: * * * Now, it's five minutes to twelve, and the lawyers are going to make some legal arguments when you all leave. I see no good reason for you all just sitting here, so I am going to give you a long lunch break. You don't have to be back until 1:30.

"MR. BRUNSON: Have we had some stipulation on separation?

"MR. HAAS: That question won't be raised.

"MR. BRUNSON: Well, before they leave it seems like we ought . . .

"MR. HAAS: All right. Let's go in the judge's office.

"THE COURT: Go ahead.

(Whereupon, the defendant, the defendant's attorney and the assistant district attorney retired to the Judge's office and the following occurred out of the presence of the jury:)

"MR. HAAS: We don't have a form, but let the record show that the defendant, by and through her attorney, Thomas M. Haas, and the assistant district attorney, Mr. Melvin W. Brunson, stipulate and agree that the jury may separate and go their separate ways, subject to the Judge's instructions. Is that all right[?]

"MR. BRUNSON: Yes, sir."

■ We think that the failure of defense counsel to object or ask for a mistrial precludes our finding error in the assistant District Attorney's using the word "separation" in the presence of the jury.

When a separation of the jury is shown to have occurred in the trial of a felony indictment then the State has the burden of showing that no one approached any of the jurors to influence the verdict. Smith v. State, 39 Ala.App. 501, 105 So.2d 662; Wright v. State, 38 Ala.App. 64, 79 So.2d 66; Chappelle v. State, 267 Ala. 37, 99 So. 2d 431.

Michie's Code 1958, T. 30, § 97(1) regulates separation by consent in counties populated by 140,000 or more under the latest census; this covers Mobile County. Among other things this Act provides:

"It shall be improper for the trial court to ask * * * in the hearing of the jury whether or not he or they will consent to a separation * * *. It shall be improper for * * * the prosecuting attorney to state to the trial court in the hearing of the jury that he or they consent to a separation * * *."

Strictly speaking, the prosecutor's question does not fall within the impropriety denounced by the statute. Since the point was neither reserved by objection before the jury went to lunch nor by way of a ground in a motion for new trial, the State was given no opportunity in the trial court to exonerate itself from the pall cast by the separation. Moreover, the agreement

to allow the separation was made with the knowledge of the prosecutor's question going immediately before the in camera conference. We find no error.

## IV

The trial judge refused requested charge No. 6, which reads as follows:

"I charge you, members of the Jury, that you must find the Defendant not guilty, if the conduct of the Defendant upon a reasonable hypothesis is consistent with her innocence."

One of appellant's supporting citations is Du Bose v. State, 19 Ala.App. 630, 99 So. 746, wherein Bricken, P. J., wrote that (hn 6) it was improper to deny charge 2 of the same tenor. However, the *Du Bose* opinion, *supra,* concludes with the following majority declaration:

"SAMFORD and FOSTER, JJ., concur in the reversal of this case, but as to charge 2 refused to the defendant they are of the opinion that under the authorities of Davis v. State, 188 Ala. 59, 66 So. 67, and Edwards v. State, 205 Ala. 160, 87 So. 179, the charge was properly refused."

Since the Court of Appeals was always a three judge court, the quoted matter was the majority opinion on this point.

Of a charge similar to No. 6 here refused Judge Carr wrote in Foster v. State, 37 Ala.App. 213, 66 So.2d 204 (concerning charge 52) therein:

"Our study of the authorities leads to the conclusion that in the earlier cases the appellate courts did not have a tendency to condemn written instructions because they were not based on the evidence. Charge 52 in the case at bar does not contain this hypothesis. Even so, it was approved in the following cases: Gregory v. State, 140 Ala. 16, 37 So. 259; Brown v. State, 118 Ala. 111, 23 So. 81; Howard v. State, 151 Ala. 22, 44

So. 95; Wilson v. State, 14 Ala.App. 87, 71 So. 971; Baker v. State, 19 Ala.App. 437, 97 So. 901; Clayton v. State, 23 Ala.App. 150, 123 So. 250.

"In the more recent cases the appellate courts seem to be committed to the view that a written charge which is not hypothesized on the evidence may be properly refused. For this reason charge 52 in the instant case was disapproved in: Baker v. State, 210 Ala. 320, 97 So. 903; Deloney v. State, 225 Ala. 65, 142 So. 432; Wood v. State, 17 Ala.App. 654, 88 So. 28; Rountree v. State, 20 Ala.App. 225, 101 So. 325; Du Bose v. State, 19 Ala.App. 630, 99 So. 746; and Morgan v. State, 20 Ala.App. 331, 102 So. 236."

Even though the Attorney General has neglected to file a supplemental brief under Code 1940, T. 15, § 389, we cannot ignore our duty to conduct independent research. In this case the statute has turned into another "lazy lawyer" enactment.[1]

■ Accordingly, we follow *Foster* and hold that the refusal of charge 6 was free from error.

## V

Here, in closing argument we find:

"MR. BRUNSON: Now, an awful lot has been said about this: Well, the real party in this case is not the defendant. This is just a scapegoat for someone else. Well, this is the scapegoat that would sell 15 bags of marijuana to your children.

"MR. HAAS: I object to that. Now, wait a minute. I want the record to show that he has pointed at the defendant and said, 'This is a scapegoat that would sell 15 bags of marijuana to your children,' talking to the jury. I can't think of a more objectionable, improper argument by a prosecutor.

"THE COURT: Sustained.

"MR. HAAS: I ask the Court to properly instruct the jury that they

1. c. f. Michie's 1958 Code, T. 7, § 372(1).

should place no credence whatsoever in such a statement by the prosecutor.

"THE COURT: Completely disregard Mr. Brunson's last remark about what this defendant may do. It doesn't have anything to do with this case.

"MR. HAAS: If the Court, please, I feel that it's so improper that for the record I must move for a mistrial. There is absolutely no evidence to back up what he said.

"THE COURT: I am going to let the jury go back in the jury room a minute."

When the jury retired, the court, after legal argument, denied the motion. On the jury's return to the box the trial judge told the jury that the argument was improper. He then, to each juror, put the following question:

"* * * After I told you to completely disregard that statement, would that statement in any way prejudice any one of you from rendering a fair and impartial verdict in this particular case, based on the evidence you heard in this case, and not what Mr. Bronson said[?]"

Each juror answered in the negative—indeed most of them rephrased their reply into an affirmative disclaimer of any influence from having heard the improper argument. In this respect we have a situation quite unlike that in Racine v. State, 290 Ala. 225, 275 So.2d 655.

Since the statement did not partake of an appeal to racial or religious prejudice we do not think this argument should be classified as ineradicable within the scope of Washington v. State, 259 Ala. 104, 65 So.2d 704; McLemore v. International Union, etc., 264 Ala. 538, 88 So.2d 170.

■ We consider that the trial judge took prompt, clear and forceful measures to expunge any prejudice from such statement. Myhand v. State, 259 Ala. 415, 66 So.2d 544.

The judgment below is due to be

Affirmed.

All the Judges concur.

## ON REHEARING

CATES, Presiding Judge.

In his brief accompanying the application for rehearing appellant's counsel invites us to equate Thomas v. State, 18 Ala.App. 268, 90 So. 878 with the case at bar as one of ineradicable prejudice by the prosecutor in closing argument.

In *Thomas* (a homicide) the rhetoric referred to stopping "making widows and orphans." The trial judge merely said, "That is not a proper argument." In Rogers v. State, 275 Ala. 588, 157 So.2d 13 there was another distinct ground for reversal apart from a reference to the accused's depriving the wife and children of deceased of his companionship. Hence, we think the portion of the *Rogers* keyed to head note 9 was calling the trial court's attention propter aliud examen so as to avoid the recurrence of the admittedly erroneous argument.

On original deliverance we cited *Myhand*, supra, because we relied on the trial judge's action as showing an expungement in this case. We distinguish *Thomas*, supra, which we think is a case wherein the trial judge ruled in casual and perfunctory manner without even stating to whom his statement was addressed. We do not treat *Thomas* as an example of ineradicable prejudice, but rather a case of an apathetic or perfunctory action by the trial judge.

Here the contrary appears with first, the instruction to "completely disregard Mr. Brunson's last remark" and second, the polling of the jury as to each of them having a clean slate for a fair and impartial verdict.

The application for rehearing is hereby

Overruled.

CATES, P. J., and ALMON, HARRIS and DeCARLO, JJ., concur.

TYSON, J., not sitting.